# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ROBERT J. REPETTO,
                    Appellant,

                              v.

DEPARTMENT OF
    TRANSPORTATION,
                    Agency.

DOCKET NUMBER
PH-0752-14-0759-I-1

DATE: February 6, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Robert J. Repetto</u>, Sewell, New Jersey, pro se.

<u>Christian Lewerenz</u>, Esquire, Jamaica, New York, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his placement on enforced leave effective February 10, 2014.[2]  For the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

[2]  The appellant filed a separate appeal of an earlier period of enforced leave, which the administrative judge joined with the instant appeal.  Initial Appeal File (IAF), Tab 3;

reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's placement on enforced leave effective February 10, 2014, is NOT SUSTAINED.

## DISCUSSION OF ARGUMENTS ON REVIEW

Background

¶2    The appellant currently serves as an Air Traffic Control Specialist (ATCS) with the Federal Aviation Administration (FAA). MSPB Docket No. PH-0752-14-0458-I-1, Initial Appeal File (0458 IAF), Tab 3, Subtab 4f. Pursuant to a settlement agreement of a prior Board appeal involving a period of enforced leave in late-2012, and early-2013, due to medical incapacitation, the appellant was transferred to New Castle, Delaware, and was assigned duties at the Wilmington, Delaware Air Traffic Control Tower (ATCT), which did not require a medical clearance, to the extent they were available. 0458 IAF, Tab 3, Subtab 4g. The agency agreed, in the event no duties were available at the Wilmington ATCT, to search for similar duties for the appellant to perform in other agency locations within the local commuting area. *Id*.

¶3    In a letter dated January 2, 2014, the agency informed the appellant that there were no available duties for him to perform at either his assigned work location or within the applicable local commuting area for the week of January 6-10, 2014, and that he should not report for duty during this time.[3] 0458 IAF, Tab 3, Subtab 4d. On January 10, 2014, the agency issued the appellant a notice of proposed enforced leave explaining that there would be no available duties for the appellant to perform beyond the week of January 13-17, 2014, and

5 C.F.R. § 1201.36(a)(2); *see* MSPB Docket No. PH-0752-14-0458-I-1. The administrative judge subsequently issued an initial decision addressing both periods of enforced leave. IAF, Tab 13, Initial Decision (ID). For the purposes of clarity, we SEVER the appeals and issue separate orders addressing each period of enforced leave.

[3] This period of enforced leave is the subject of the appellant's other appeal in MSPB Docket No. PH-0752-14-0458-I-1.

that no sooner than 30 days from the date of its notice, the agency proposed to place the appellant on enforced leave, which would consist of the appellant's use of accrued sick or annual leave or his placement in a leave without pay status. IAF, Tab 1 at 7-9. In support of its proposal, the agency alleged that, as a condition of the appellant's position as an ATCS, he was required to maintain a medical clearance, and that "[i]n a memorandum dated July 15, 2010[,] you were notified by the Regional Flight Surgeon that you were medically incapacitated to perform . . . the safety-sensitive duties" of an ATCS. *Id.* The record reflects that the agency's Deputy Regional Flight Surgeon concluded in July 2010, that the appellant was medically incapacitated to serve as an ATCS after he self-reported an alcohol-related incident, and that following a full medical evaluation, he was found to be medically incapacitated based on a diagnosis of alcohol abuse under the FAA's medical qualifications. 0458 IAF, Tab 3, Subtab 4h at Tabs 4aa-4dd.[4] The agency issued a letter of decision imposing the appellant's enforced leave effective February 10, 2014. IAF, Tab 1 at 13-17.

¶4    The administrative judge held a hearing and sustained the appellant's placement on enforced leave effective February 10, 2014. ID at 11. In sustaining the agency's action, the administrative judge found that the agency established a valid basis for placing the appellant on enforced leave, that it complied with the procedural requirements for taking an adverse action under 5 U.S.C. chapter 75, and that its action promoted the efficiency of its operational mission. ID at 7-11, 16. The administrative judge also rejected the appellant's harmful error affirmative defenses. ID at 11-15.

¶5    The appellant has filed a petition for review of the initial decision. MSPB Docket No. PH-0752-14-0458-I-1, Petition for Review (PFR) File, Tab 1. In his petition for review, the appellant argues, among other things, that the agency could not base its enforced leave action on the July 2010 diagnosis of alcohol

---

[4] Subtab 4h consists of the entire agency file submitted in MSPB Docket No. PH-0752-13-0152-I-1 concerning the 2012-2013 period of enforced leave.

abuse because, when the agency proposed the adverse action, it had amended its medical qualification standards concerning substance abuse.  PFR File, Tab 1 at 13-14.  He contends that the administrative judge erred in relying on an earlier version of these qualifications which employed a different standard for alcohol abuse in sustaining his placement on enforced leave.  *Id.*  The agency has filed a response in opposition, and the appellant has filed a reply.  PFR File, Tabs 2, 6. For the reasons that follow, we agree with the appellant's argument on review.

The appellant's placement on enforced leave is not sustained.

¶6        An agency's placement of an employee on enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction.  *See Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 10 (2014); *see also* 5 U.S.C. § 7512(2).  To sustain such a suspension, the agency must prove by preponderant evidence that the charged conduct occurred, that a nexus exists between the conduct and the service efficiency, and that the penalty is reasonable. *Abbott*, 121 M.S.P.R. 294, ¶ 10.

¶7        The administrative judge sustained the appellant's placement on enforced leave based upon his July 2010 diagnosis of alcohol abuse under the medical qualification standards for an ATCS contained within FAA Order 3930.3A.  *See* ID at 7; *see also* 0458 IAF, Tab 3, Subtab 4h at 4hh.  Under these standards, in order to be medically cleared for duty, an ATCS could not have a clinical diagnosis of alcoholism or alcohol abuse.  *See* 0458 IAF, Tab 3, Subtab 4h at 4hh (FAA Order 3930.3A, Appendix 1 § (G)(3)).  Effective July 20, 2012, however, the agency changed the medical qualification standards for an ATCS, including a change to the definition of substance abuse.  *See* IAF, Tab 9 at 10-11, 28-29 (FAA Order 3930.3B).  Under the revised standards, in order to be medically qualified for an ATCS position, an ATCS cannot have an established history or clinical diagnosis of several conditions, including substance abuse (such as

alcohol), within the preceding 2 years.[5] *Id*. at 29. The agency's prior version of the medical qualification standards contained no such temporal limitation. 0458 IAF, Tab 3, Subtab 4h at 4hh (FAA Order 3930.3A, Appendix 1, § (G)(3), stating that "[a]lcoholism and/or Alcohol Abuse—must have no clinical diagnosis of alcoholism or alcohol abuse, since these constitute a hazard to safety in Air Traffic Control System").

¶8        Based on the agency's revised medical qualifications for the appellant's position in effect at the time of his placement on enforced leave, we find that the agency cannot substantiate its adverse action based on the appellant's July 2010 diagnosis of alcohol abuse. Under the agency's current medical qualifications, the temporal scope of evidence that can support an alcohol abuse diagnosis is limited to the preceding 2-year period. *See* IAF, Tab 9 at 29. In taking its enforced leave action, however, the agency relied upon the appellant's July 2010 diagnosis of alcohol abuse, which itself was based on his self-reporting an alcohol-related incident in July 2010. *See* IAF, Tab 1 at 7 (notice of proposed enforced leave citing July 2010 diagnosis); *see also* 0458 IAF, Tab 3, Subtab 4h at 4aa (agency memorandum explaining that the appellant was diagnosed with alcohol abuse effective July 14, 2010), Subtab 4dd (initial finding of medical incapacitation based on the appellant's report of an alcohol-related incident). Because both the July 2010 alcohol abuse diagnosis and its supporting evidence were more than 2 years old at the time of the proposed adverse action, we find that pursuant to agency policy, the agency could not substantiate placing the appellant on enforced leave based on medical incapacity due to alcohol abuse. *See Abbott*, 121 M.S.P.R. 294, ¶ 10 (an agency must establish that the charged conduct occurred in order to sustain an enforced leave action); *see also Shifflett v. Department of the Navy*, 83 M.S.P.R. 472, ¶ 5 (1999) (an agency is bound to conform and follow the regulations and policies it adopts and the Board is

---

[5] Under FAA Order 3930.3B, substance abuse can be established through one of four showings. IAF, Tab 9 at 29 (FAA Order 3930.3B, Appendix A, § (5)(e)(1)-(4)).

required to enforce such provisions). The current record, moreover, is devoid of any other evidence within a 2-year period of the adverse action that could substantiate placing the appellant on enforced leave for failing to medically qualify for his ATCS position.

¶9    In reaching this conclusion, we have considered that, during the internal review of the appellant's July 2010 medical diagnosis, the agency's chief psychiatrist reconsidered the appellant's original diagnosis and determined that the appellant presented symptoms more consistent with a diagnosis of alcohol dependence rather than alcohol abuse.[6] *See* 0458 IAF, Tab 3, Subtab 4h at 4v. Under both the original and the revised medical retention standards for an ATCS, an ATCS cannot have a diagnosis of substance dependence, including alcohol dependence. *See* IAF, Tab 9 at 29 (FAA Order 3930.3B); *see also* 0458 IAF, Tab 3, Subtab 4h at 4hh (FAA Order 3930.3A). In proposing the appellant's enforced leave, however, the agency only cited to the July 15, 2010 determination that he was medically incapacitated for his ATCS position based on a diagnosis of alcohol abuse. *See* IAF, Tab 1 at 7; *see also* 0458 IAF, Tab 3, Subtab 4h at 4aa (stating that the appellant was diagnosed with alcohol abuse under FAA Order 3930.3A, Appendix I § (G)(3), effective July 14, 2010). The Board is required to review the agency's decision in an adverse action solely on the grounds invoked by the agency, and the Board may not substitute what it considers to be a more adequate or proper basis. *Rodriguez v. Department of Homeland Security*, 108 M.S.P.R. 525, ¶ 11 (2008). The subsequent revision to the appellant's diagnosis, which was not cited in either the agency's notice of proposed enforced leave or its letter of decision, therefore does not change our findings. *See id.* An agency, moreover, cannot rely on new and material information outside of the scope of the notice of proposed adverse action in

---

[6] Pursuant to the collective bargaining agreement, the appellant had the option of requesting a higher-level review of his medical diagnosis, which he exercised. *See* 0458 IAF, Tab 3, Subtab 4h at 4u.

imposing that action. *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999).

¶10 Accordingly, we find that the agency failed to establish a valid basis for placing the appellant on enforced leave based on his 2010 diagnosis of alcohol abuse under the agency's medical qualifications in effect at the time it proposed the adverse action. Because the agency cannot demonstrate it had a valid basis for its adverse action, the appellant's placement on enforced leave is NOT SUSTAINED. *See Abbott*, 121 M.S.P.R. 294, ¶ 10; *see also Norrington v. Department of the Air Force*, 83 M.S.P.R. 23, ¶¶ 4, 6, 9 (1999) (sustaining an enforced leave action based on the appellant's medical inability to perform the functions of his position). In reaching this finding, however, we stress that we are *not* concluding that the appellant is medically qualified to return to his position as an ATCS. Rather, we only conclude that the agency has failed to establish by preponderant evidence that it had a valid basis for placing the appellant on enforced leave under the medical qualifications for an ATCS in effect at the time it proposed the adverse action.[7]

## ORDER

¶11 We ORDER the agency to cancel the appellant's enforced leave and to restore the appellant effective February 10, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶12 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to

---

[7] Because we do not sustain the agency's charge, we have no occasion to address whether the appellant established his affirmative defenses of harmful error.

provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶13 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶14 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶15 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The

regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

 If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____

William D. Spencer
Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)
   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.